All right, we're ready to proceed in our next case, United States v. Madrid-Mendoza, case number 19-2105. We're ready to hear from the appellant. Thank you, Your Honor. Good morning. My name is Amanda Lavin, and I'm an assistant federal defender in Albuquerque, New Mexico, and I represent the defendant appellant, Mr. Madrid-Mendoza. Mr. Madrid was detained in violation of his Fourth Amendment right to be free from unreasonable search and seizure. The vehicle he was traveling in was pulled over for speeding, and what should have been no more than a few minutes to issue a written warning or a verbal warning instead was prolonged into an approximately 30-minute roadside interrogation, at which no point did the arresting officer establish reasonable suspicion. Counsel, I'm getting some background noise. Perhaps I think your mic is turned too high. Okay, go ahead. I'm sorry to interrupt. I'll try and turn down the volume. Okay. Now, where the district court got it wrong in this case is Judge Parker used the wrong standard. Instead of weighing the evidence, determining what weight to give the evidence, what inferences to draw that evidence in an even-handed way, he deferred completely to the officer's subjective conclusions and inferences about his observations because he viewed the evidence in the light most that even if the court erred in viewing the evidence in an improper light or at least articulated the wrong standard, under our decision in United States against Santos, wasn't it supposed to defer to Officer Lucero's reasonable inferences? Your Honor, I agree that that is what the precedent dictates, that if the inferences are reasonable, then the court should defer to them. However, upon examination of what this officer observed and the inferences he drew from those observations, they were not supported by objective facts. And so while the court is permitted to defer to an officer's training and experience, if those observations and inferences aren't supported by objective facts, then the court does not have to defer to what the officer's inferences are. Context still matters. In other words, the officer would have had to explain why his training and experience informed whether something was out of the ordinary such that it would amount to reasonable suspicion. And so the court, just because the court has to defer to an officer in terms of their training and experience, doesn't mean that they have to out of hand to just accept whatever subjective conclusions the officer is drawing from what he's observing. Well, what facts are disputed at this point? Your Honor, in terms of the facts that are disputed, I believe what is in dispute here is the officer's subjective conclusions about what we would say are objective facts. For example, the court agreed with the officer that I-40, a major east-west highway, is a smuggling route, which we highly dispute. Now, the officer drew... Was there any contrary evidence to that? Well, Your Honor, it was the government's burden to show that I-40 was a smuggling route. I understand, but wouldn't you agree that the erroneous rule cited by the district court, that is construing the evidence in the light most favorable to the government, requires there to be opposing evidence that the district court would draw the inference in favor of the government versus, as Judge Matheson indicated, the requirement to when there is no contrary evidence? Well, Your Honor, it was not a reasonable inference to suggest that I-40 is a smuggling route, and so there's no... He said that. So, if there's no contrary evidence, don't we defer to the officer then without running afoul of any standard of finding inferences favorable to the government? Your Honor, the contrary evidence is that these men who were traveling on I-40 were on the most direct route from California to Amarillo, Texas. And so, as the circuit has ruled before, it would be suspicious for them to have not taken that route. And the court's decision and analysis is always informed by common sense and experience. And so, because the officer is saying this is what I-40 is, it's a smuggling route, the court still has a requirement to use its common sense and experience to recognize that there was no other reasonable alternative that these men could have taken in terms of their trip route. And so, it was objectively reasonable for the men to travel on I-40. Therefore, the court does not need contrary evidence to negate this idea that I-40 is a major smuggling route because the notion is, in a lot of ways, absurd. As far as the other factors, Your Honor, it's not necessarily that we have to do away with whether or not there's, it's not a question of innocence versus guilt as we- Well, counsel, counsel, before we leave disputed facts, do you have any more besides the I-40 point? Your Honor, we concede that a lot of the facts that are at issue here are objective. It's more the subjective interpretation by the officer that's at issue. And so, we're not disputing the fact that there was a voter ID. We're not disputing the fact that there were seven people in the vehicle. We're not disputing the fact that there were two younger occupants of the vehicle. But we're not, we are disputing that this characterization that the government has made on several occasions that this was a car full of teenagers and that they should have been in school. And we are disputing the fact that body odor is somehow indicative of alien smuggling. And so, those are the disputes at issue, Your Honor, whether or not all of these objective facts mean what the officer says they mean. And so, in terms of some of these factors that the court found supported a finding of I want to first talk about the fact that the driver of the vehicle didn't have a driver's license and then he had a Mexican voter identification card. Now, Mexican nationality is not indicative of anything. The degree of suspicion that attaches to this particular factor is essentially null and void. Well, most law-abiding drivers on interstates and roads in general have driver's licenses, don't they? That's correct, Your Honor. And the officer did have reasonable suspicion to suspect that this, Mr. Salazar, the driver of this vehicle, was driving without a license. However, there's no nexus between not having a license and alien smuggling. And so, while he may have been within- Well, the fact that he has a Mexican ID, does that lean a little bit toward smuggling? We would submit that it's not, Your Honor. The court ruled in Brioni-Ponce that there are certain things that the court can look to when determining whether or not there's reasonable suspicion that someone is in the country illegally. And while evidence of Mexican nationality might be one of those things, it needs to be accompanied by something more. For example, information that this vehicle was coming from the border and maybe other information about what these men were doing that would indicate that they were all from Mexico and that they had just come from the border. They were traveling on a highway approximately 250 miles north of the border, and as far as the officer knew, their origin was California. And so, this ID, without anything more, is just evidence that this person is from Mexico. The officer did nothing to investigate his suspicion that Mexican nationality is somehow supporting reasonable suspicion that human smuggling is taking place. The district court in this case looked at several things, did it not? It did not look at one and then discard that and then look at another and discard that. But doesn't our case law, in fact, the Supreme Court decisions require that we look at totality? Yes, Your Honor. But when the court looks, analyzes all of these factors under the totality of the circumstances, it still individually examines each factor and determines what weight to give each factor. And that's, there's many examples of this circuit doing, undergoing that exact analysis. One of those is Lewis versus Vasquez cited in our briefs. And so, we do need to look at the individual factors. Otherwise, there's no way to get a whole picture of how they all work together. And in this case- But what is your counsel, what is your strongest analogous 10th Circuit case to support your position of no reasonable suspicion? Is it Lewis? Is it something else? What's your best case? Well, Your Honor, I don't know if I would point to necessarily one exact case, but I do think Lewis is very informative. Well, how about two or three? Just give us something that we can work with. Well, I would submit that Vasquez versus Lewis, which this court decided in 2016, is very helpful. Because in that situation, the court went through each factor that the court had relied on as far as reasonable suspicion and said, we cannot think of a scenario in which a combination of otherwise innocent facts becomes suspicious, which is exactly what we have here. The objective facts here are that we had seven men in a passenger vehicle designed to accommodate eight passengers. It was insured. It was registered. The VIN number checked out. It was traveling on a major east-west highway, 250 miles from the border. The men had an explanation as to where they were going. There was nothing that furthered any of the suspicions that Officer Lucero purportedly had at the outset of the stop of the case. As far as another case that I think would be informative, I believe that de la Cruz is another case that this court could consider in terms of being fairly analogous. In that case, the circuit also found that there was no reasonable suspicion. The stop was a significant distance from the United States border, much like our case. There was no evidence that men were furthering their unlawful presence in the country. Granted, the offense at issue in that case was a violation of 8 United States Code 1326, unlawful entry. However, I think the facts are sort of similar because we're talking about men who are here illegally or not, whether or not there's evidence of that that would therefore justify further investigation into the possibility of human smuggling. In de la Cruz, the court held that just because one member of the group may be in the country unlawfully, that doesn't necessarily mean that everyone that accompanies that person is also involved in criminal activity. And so in this case, just because the driver was of Mexican nationality, the officer, it's not reasonable for him to infer then that everyone else in the car is also Mexican and that they're all being smuggled. I think one of the most important things to take away from the officer's testimony at the motion to suppress hearing is that he wasn't able to articulate what he thought was happening. And that's not permitted. What he said was that he thought some sort of crime was afoot and he didn't know who was smuggling these people. There was just some sort of criminal activity occurring. And if the panel has no more questions, I would like to reserve the remainder. He did make arrangements for Homeland Security to come in. So doesn't that suggest what his reasonable suspicion was? Right. I mean, I agree that he ultimately concluded that he suspected human smuggling. However, he wasn't able to articulate why, other than these very generalized, objectively innocent facts. Okay. One last thing. Are you still urging us to remand for the district court to reconsider reasonable suspicion or should we take it on ourselves? Your Honor, the court may do either. I believe that the court is within its authority to determine that the court erred in using the wrong standard and in thus doing reach the wrong conclusion about the facts in this case. And so if the court, I think the court could do either way, remand or overturn the district court's findings. Thank you. Thank you. Ready to hear from the appellee. Thank you, Your Honor. May it please the court. My name is Robert Golderis. I represent the United States of America. I'd like to begin by addressing the issue of why the district court's seemingly erroneous application of law here. And I believe your honors were getting at this at the end of the petitioner's argument, do not necessarily mandate remand in this case. As this court ruled recently, before we get too far into this, I think you're sugarcoating it when you say seemingly erroneous. It is erroneous, isn't it? Your Honor, I, I'm going to stick with my, my phrasing there, and I'm not trying to, to be glib about this, but if the district court, Your Honor, yes, the district court did state that it evaluated the evidence in the light most favorable to the government. However, I think when this court goes wrong, is that error? Yes, Your Honor, it is absolutely error. I think if we're looking at, I think it's also important for this court when evaluating what the, what Mr. Medra-Mendoza is asking to, to say that the court just was wildly out of line with accepting the district court's inferences from the law enforcement officer. In fact, the district court found multiple things against the government. First, the presence of the luggage in the vehicle. That was an undisputed fact. There was some amount of luggage in the back that was visible to the officer. And the district court evaluated that and said, this is not something that I'm going to weigh toward reasonable suspicion. Further, the government asserted at the district court level that the continuation of the stop was voluntary once the officer asked both Mr. Medra-Mendoza, as well as the driver, whether or not they would consent to further questioning, and the district court found against that. So I don't want to spend a ton of time on that, Your Honors. I just want to point out that while the district court put in, I believe it was one line at the end of their, their memorandum of opinion and order, that they were, they were using an erroneous standard when evaluating all of the evidence and weighing the officer's reasonable inferences. In fact, the court did, did state that some of the officer's inferences were not in fact reasonable. Well, Counselor, you're, I think you're referring to a passage on page 15 of the district court's order. And this is after the court had walked through the various factors and then said that it concludes that the totality of the specific articulable facts viewed in the light most favorable to the United States reasonably prompted Officer Lucero to suspect that there was a transport, transporting undocumented aliens. I'm not sure how, how we're supposed to sort of disentangle what inferences the court may have drawn in favor of the government under the erroneous standard of review, as opposed to drawing or deferring to inferences that the officer may reasonably have made. And why shouldn't we send this back so that the district court can do this correctly under the proper standard? Your Honor, I think I heard two questions in, so I'd like to answer them both, if I may. The first question I understood your Honor asking is how, how was this court supposed to disentangle what the court erroneously viewed in the light most favorable and what the court at lower level actually weighed properly? And the answer is that you don't have to, because the answer to your second question, your Honor, why you shouldn't just send this case back is clear in United States versus Shelton. Because in that case, this court said that the district court's incorrect recitation of the standard, in this case, in that case as well, the light most favorable had no bearing, no bearing on the appeal because the defendant had not disputed any of the factual findings. When your Honor asked defense counsel a few minutes ago what facts were in dispute, I think the answer was, first off, just the officer's reasonable subjective conclusions. And then the issue of I-40 as a smuggling run. And as this court pointed out, there was nothing offered against that. And what I think is important for the court not to miss is that not only did the officer state on the record he believes that I-40 is more likely a smuggling run, but he explained why. He said that I-10, which is a parallel east-west highway, has more immigration checkpoints. So based on his training and experience, he believes that it is more likely that someone who is smuggling aliens would be headed on I-40 as opposed to I-10. So what it sounds like the defense is asking this court to do or asking the district court to require is to then conduct some sort of study of, well, is that, in fact, true? The officer, in his belief, understands that there are more immigration checkpoints in I-10. That's not a fact in dispute. I understand that the defendant is also disputing whether or not body odor is reasonable suspicion. The counsel, are you saying that the defendant has to dispute what the officer believes, get inside his head, and say, well, you know, you didn't think that yesterday? That's not possible. Well, no, Your Honor. But it's not possible when we're talking about whether or not his inference was reasonable. But it is something that is an undisputed fact that the officer took the stand and said I-40 is more likely to be a smuggling route because there are checkpoints in I-10. So that is just, I guess, a naked fact to say, are there more immigration checkpoints on I-10 or I-40? The officer came in and said there were more immigration checkpoints in I-10, and that has been an undisputed fact in this case.  The issue of body odor, as well as whether or not the car was full of teenagers. Again, neither of those things are facts in dispute. The officer said, I smelled a strong odor of body odor coming from the vehicle. That was an undisputed fact that he gave. Whether or not a reasonable inference drawn from that fact is that the officer could infer there was further investigation to be done, that there could be human smuggling afoot. That is something that this court can analyze and should analyze under de novo standard, because the question is, is that a reasonable fact to consider? But the fact that there was body odor, the fact that the car was full of teenagers, your honor reviews, your honors review the record. You'll see when the officer asked the occupants of the vehicle, their ages, they were all saying 17, 18, 17, 18. I believe there may have been a 19-year-old.  The car was full of teenagers. So the only question for this court is whether or not those were reasonable reliances that the officer made to detain the passengers longer in order for immigration to arrive. And because in this case, there is no dispute of the reasonable dispute of the factual findings, there should be no bearing in this case, whether or not the district court improperly used the standard, because they did use the improper standard of reviewing the evidence in the light most favorable to the government. Counsel, was the officer's report part of the record for the suppression issue? Yes, your honor. It is part of the record here. Didn't officer Lucero testify at the hearing that Mr. Salazar's hand was shaking uncontrollably, but I don't remember seeing that description in the report. That's because the word uncontrollably wasn't in the report, your honor. I believe he said- Well, isn't that an example of the court viewing the evidence in light most favorable to the government? There's a conflict between the report, which was prepared closer to the event than the suppression hearing. Isn't the court viewing the evidence more favorable to the government on that issue? Your honor, I believe in the appellant's reply brief, they even essentially concede that his hand may have been shaking uncontrollably. On page 15, it's the second paragraph in, the officer reported that Salazar's hand shook uncontrollably. Their answer to that is he had just been pulled over by a state trooper and didn't have a license. This nervousness makes sense and was not unusual. The question here- They're not conceding that. They're just reporting that was part of the evidence at the suppression hearing. Well, I think the argument here, your honor, is that they're stating that's not unusual. So whether or not the officer said it at the suppression hearing versus his report, the defense had the chance and did thoroughly cross-examine officer Lucero at the suppression hearing. So if this court were to send that back for determination of whether or not the officer's hand was shaking uncontrollably, the district court would undoubtedly come to the same after hearing the officer's direct testimony, as well as being subjected to a very thorough cross-examination by defense, that the defendant was nervous, his hand was shaking. And it would weigh that as it should under our visu in the totality of the circumstances, along with all of the other half a dozen factors that the court found here. When do you think a reasonable suspicion arose here? Your honor, the reasonable suspicion arose at the time that the officer completed his initial conversation at the window of the vehicle and went back to his car. Now, I agree with the defense that there is, if there wasn't a reasonable suspicion there, then the delay of 43 seconds where the officer called for immigration would not be reasonable, would not be proper. So you're saying there was reasonable suspicion as soon as he saw all of these people in this vehicle? The moment when the officer went back to the vehicle, had asked for the driver's license, received only the Mexican voter ID card, when he saw the hand of the driver shaking uncontrollably, his observation was that the vehicle appeared to be completely full, that he saw several young passengers in the back at a time that he believed it was a school morning, the passengers all appearing nervous like deer in the headlights. And I just want to, on that, your honor, in the defense's reply brief, they make a note that only two of the passengers appeared nervous. That is, at least from my thorough review of the record, nowhere in the record that only two passengers were nervous. I believe the evidence that was undisputed at the district court was that all the passengers appeared like deer in the headlights and appeared very scared. So in your response to Judge Briscoe, at that point where you say he had reasonable, articulable suspicion, he had not yet smelled the strong body odor, correct? No, your honor, he had. He already poked his head in the vehicle? Your honor, he said he, and I don't want to try to quote directly here, I don't believe he poked his head in until later, but even standing there at the side of the vehicle, he was able to smell the strong body odor emanating from the vehicle. And that is what he testified to. So it was all those combination of circumstances. When he walked back to his vehicle for the first time and called for immigration, that was when all the reasonable suspicion had accumulated that made the stop. Did it further detention justifiable? What did officer Lucero say, if anything, as to whether the Mexican ID card contributed to his reasonable suspicion? Did he rely on that at the hearing? I believe he said that it did. It factored in his mind that this person didn't have a license, that they were a foreign national. And your honor, I point out. But he did, he did, uh, he did hand everything back and tell, tell, uh, Mr. Salazar and Mr. Madrid Mendoza that they were free to go. So it didn't seem to bother him when it came to that. He did tell them that they were free to go, your honor. But at that point, he did not mean that. Well, your honor, at that point, he'd already called for immigration services. So I think that, yeah, but he told them they were free to go. They could have just left, couldn't they? They didn't have to talk to him. They didn't have to, your honor, but they chose to. So the question of what they would have done. So let me ask you this. Why aren't you arguing for, uh, uh, an affirm on the basis of, of, of, of consent? They were told they were free to go. They agreed to talk. Why aren't, why isn't this a consent case? Your honor, I don't believe it's a consent case because I think that in holding with the Supreme Court's precedent in Rodriguez, the initial delay that necessitated reasonable suspicion was that 43 seconds when the officer first returned to the car. So, well, I do believe that as the government argued at the district court level, there was consent. I don't think that's the main issue here. The main issue here is did those seven factors, including the luggage, I realized the district. So if we, if we disagree with you on reasonable suspicion, we should reverse. No, your honor. I'm not asking for a reversal in that case. What I'm saying is that I know you're not asking for it, but you're, but, but you don't, but you're not arguing consent either. Your honor. I think that at the point, the passenger said they were willing to, the defendant and the driver said they were willing to stick around. There was consent. But in this case, I think the most pressing issue is the initial delay. I see my time has expired. Your honor. Thank you. You had some rebuttal, I believe from the appellant. You have to, you have to unmute. You're muted. I apologize. Just as a brief follow up as to the court's last question, the district court ruled that this was not a consensual encounter. The officer testified that had the men not agreed to speak with him, that he would have detained them. And so that finding is not challenged here, your honor. So if the court finds that there is no reasonable suspicion, this matter should be reversed. Should be either reversed or remanded. The government spent some time talking about I-40 and how the officer is saying just because at I-10 they have immigration checkpoints and I-40 they don't. That assumes incorrectly that the route, that I-10 is the route that these men should have taken. When that in fact would have been suspicious if they had taken any other route other than I-40. And I think the main takeaway from all of these facts that the court relied on to justify reasonable suspicion is that the officer did not articulate with any particularity what makes this group of men traveling from California to Texas for a construction job more suspicious than an innocent group of travelers. There's nothing to distinguish them. These objective facts support innocent behavior. And even if breaking down each individual fact, the degree of suspicion that attaches to each of them is so minimal that even in their aggregate, they don't amount to reasonable suspicion. Thank you. Thank you. Thank you, counsel. Thank you both for your arguments. The case is submitted. Thank you, Your Honor. Thank you.